UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| THOMAS A. SPALDING, Plaintiff, | ) | |
| v. | ) | No. 4:24-cv-00163-SEB-KMB |
| HOSPITAL MEDICINE ASSOCIATES, LLC, Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Self-represented Plaintiff Thomas A. Spalding ("Mr. Spalding") has sued his former employer Hospital Medicine Associates, LLC ("HMA") asserting Title VII claims based on the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA") as set forth in his January 30, 2025, Amended Complaint. Dkt. 11. Now before the Court is HMA's Motion for Summary Judgment. Dkt. 32. For the reasons stated below, that motion is **GRANTED**.

**BACKGROUND**

We have gleaned many of the relevant underlying facts from HMA's summary judgment submissions, including the Declaration of Janet Aguero, Senior Human Resources (HR) Consultant, dkt. 33-1, and from the FOIA request responses to HMA, dkt. 33-2. There we learned that Mr. Spalding had worked for HMA as a Practice Coordinator at Baptist Health Floyd Hospital for six months between May 1, 2023, and November 14, 2023, when the contract ended under which Mr. Spalding had been employed by HMA. The Hospital is located in New Albany, Indiana. Mr. Spalding's Complaint utilized the Court-issued form intended to assist *pro se* employment discrimination plaintiffs in stating the precise details of their causes of action. Dkt. 11. Mr. Spalding had checked various boxes in Section III.A of the form indicating that he was alleging a charge of

"Unequal terms and conditions of my employment" and "Other acts," specifying "hostile work environment, sexual harassment, [and] retaliation." *Id.* at 4. In Section III.D of the form, he checked boxes indicating discrimination claims based on race, color gender/sex, religion national, and age (noting birth year of 1981).

He further stated in his complaint that he had filed his charge of discrimination against HMA with the EEOC on "5/5/24" and that the EEOC right to sue notice was received by him on "9/3/24." *Id.* at 5. He also noted that he signed his judicial complaint on "1/17/25." *Id.* at 6. Attached to the Complaint are four pages, the first being the single page EEOC Right to Sue notice issued on July 31, 2024, followed by three typed pages containing a factual narrative that lays out the substance of Mr. Spalding's complaint, which is untitled, unsigned, unverified and otherwise unexplained. *Id.* at 7–10. (Its contents bear a close resemblance to the two draft charge particulars prepared on July 15 and 26, 2024, by EEOC investigator Devlin Stalion incorporating Mr. Spalding's allegations but never officially endorsed by him. Dkt. 33-2 at 32, 33.)

HMA's H.R. Consultant Aguero stated her declaration, submitted in support of HMA's Motion for Summary Judgment, dkts. 32, 34, the following:

> On May 15, 2024, HMA received a Notice of Charge of Discrimination from the EEOC that Spalding had provided sufficient information for the EEOC to consider that submission a charge. But the Notice also stated that HMA would "receive notification when a perfected charge" had been received from Spalding. . . .
>
> The Notice included only limited details about the circumstances of Spalding's Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964 claims. Specifically, it stated: "The circumstances of the alleged discrimination are based on Age, Color, Other, Race, Religion, Retaliation, Sex, and involve issues of Harassment, Promotion, Sexual Harassment that are alleged to have occurred on or about 11/06/2023."

Dkt. 33-1.

The EEOC's Right to Sue Notice stated in applicable part as follows:

> This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in the federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice**. Receipt generally occurs on the date that you (or your representative) view this document.

Dkt. 11 at 7 (emphasis in original).

In HMA's September 18, 2025, Motion for Summary Judgment, dkt. 32, Defendant contends that Mr. Spalding's lawsuit was not timely filed and his claims must be dismissed because they are barred by the applicable statute of limitations. He was required by law to file his Complaint within the statutory 90-day period, which began running on the date of his receipt of the notice of his right to sue. We address this contention below in determining whether Mr. Spalding's lawsuit survives HMA's motion for summary judgment.

**LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because summary judgment requires "no *genuine* issue of *material* fact," "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48 (1986) (emphasis in original). Material facts are those that "might affect the outcome of the suit," and a dispute of material fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

As the "put up or shut up" moment in a lawsuit, summary judgment requires parties to "show what evidence [they] ha[ve] that would convince the trier of fact" to find in their favor on any disputed elements. *Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014). A movant's "facts as claimed and supported by admissible evidence . . . are admitted without controversy" unless "the

non-movant specifically controverts the facts . . . with admissible evidence." S.D. Ind. L.R. 56-1(f). Because summary judgment is not "a vehicle for resolving factual disputes," the district court need not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (citing *Anderson,* 477 U.S. at 249–50).

## DISCUSSION

### I. Administrative Exhaustion Procedural Requirements

Federal statutes set forth the procedural steps a complainant must satisfy in order to bring a successful employment discrimination lawsuit. These steps along with their specified timelines are for the most part mandatory and must be complied with in order for a case to be adjudicated by the court on the merits.

An aggrieved employee such as Mr. Spalding begins the complaint process by filing a charge of discrimination with the EEOC; in Indiana, that charge must be filed within 300 days of the date when the final unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA); *Applegate v. St. Vincent Health, Inc.*, No. 1:22-CV-01097, 2023 WL 3603975, at *4 (S.D. Ind. May 23, 2023). Once a charge is filed with the EEOC, an investigation by the agency ensues to determine whether the EEOC itself should take further action on behalf of the claimant to vindicate his rights or whether the EEOC should issue to the claimant a notice of the right to sue authorizing commencement of judicial proceedings.

The complainant is expected to participate in that agency process under Title VII and the Age Discrimination in Employment Act. Exhausting administrative remedies is a prerequisite to filing judicial claims under both Title VII and the ADEA. *Bommiasamy v. NES Oklahoma, Inc.*,

No. 24-1654, 2025 WL 2364965, at *3 (7th Cir. 2025) ("Before filing a claim in federal court . . . , a plaintiff must exhaust his or her administrative remedies.") (citing *Anderson v. United Airlines, Inc*., 140 F.4th 385, 390 (7th Cir. 2025 (Title VII); *Tyburski v. City of Chicago*, 964 F.3d 590, 601 (7th Cir. 2020) (ADEA)).

When the EEOC decides to issue a right to sue notice, it informs the complainant of that decision, making clear that it will be taking no action against the respondent based on the filed charge, but that the complainant, if he/she chooses, may file a lawsuit against the respondent. If a decision to sue is made by the complainant, the complaint must be filed in the appropriate federal district court within 90 days from the date the notice was received by the complainant. The right to sue notice makes clear (using a bold font) that if a lawsuit is not filed within the allotted 90 days, the complainant stands to forfeit the right to sue on the basis of the facts alleged in the EEOC complaint. 42 U.S.C. § 2000e-5(f)(1); *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003).[1]

**II. Mr. Spalding's EEOC Charge of Discrimination**

In the case at bar, for reasons we can't explain, the person who appears to be least interested in vindicating Mr. Spalding's rights under the employment discrimination statutes is Mr. Spalding himself. Based on the chronology of events throughout this litigation, Mr. Spalding's lack of diligence in prosecuting his claims and his inattentiveness to the requirements of the process on which he embarked to advance his claims of discrimination against his former employer have been well documented throughout the agency file and, frankly, hard to understand.

---

[1] There is an exception which we mention only for sake of accuracy, though it has no application here. If a plaintiff does not comply with that 90-day deadline, he may be entitled to equitable tolling if he shows that he has made a good faith error or "has been prevented in some extraordinary way" from complying with the deadline. *See Lax v. Mayorkas*, 20 F.4th 1178, 1183 (7th Cir. 2021). Absent equitable tolling, a claimant who misses the deadline is out of luck in terms of bringing his lawsuit.

After making initial contact with EEOC on April 29, 2024, Mr. Spalding submitted, one week later on May 5, 2024, his signed EEOC Form 5A (Charge of Discrimination) alleging that his former employer, HMA, had engaged in discrimination and retaliation against him in violation of Title VII and the ADEA based on his age, color, race, religion, and sex. Dkt. 33-1. The date Mr. Spalding specified in his charge when the discrimination occurred was November 6, 2023. Thus, his May 5, 2024, EEOC charge was brought well within the 300-day time limit. HMA received a Notice of Charge of Discrimination from the EEOC relating to Mr. Spalding's allegations on May 15, 2024, but that notice to HMA lacked any specifics, which the EEOC explained saying that it possessed insufficient information as to the precise acts of discrimination alleged but promised that HMA would thereafter "receive notification when a perfected charge" had been received from Mr. Spalding. Dkt. 33-1 at 3. Thus, despite EEOC's notification of the filing of the charge by Mr. Spalding, HMA was unable to investigate his specific allegations due to the lack of information as to the details about the alleged unlawful conduct. *Id.* at 3–4.

After he filed his charge, numerous attempts over the ensuing months were made by EEOC investigators to contact Mr. Spalding. On June 3, 2024, the following email was sent by Devlin Stalion, the assigned EEOC investigator for Mr. Spalding's case, to Mr. Spalding:

> I am emailing you to coordinate your Intake Interview. I've tried to call the number you have provided . . . several times but it keeps hanging up immediately, and doesn't let me leave a voicemail. We do not have the ability to text from our numbers, just FYI. If I am unable to contact you by June 13, 2024, I will have to process your case with the available information. Please give me a call back . . . . Hope all is well.

Dkt. 33-2 at 46.

Three days later, on June 6th, Mr. Stalion tried again to reach Mr. Spalding by email in an attempt to schedule a meeting to coordinate an intake interview and to finalize his formal charge.

In that communication,[2] Mr. Spalding was informed that he needed to respond by June 17, otherwise his Charge would be processed, but because it lacked sufficient factual information, it would likely be dismissed and the right to sue letter would issue. Mr. Spalding was explicitly informed by EEOC personnel in the June 6 email that there was "not enough information to support [his] allegations, and [he has] not signed the formal charge." *Id.* at 47.

The next week, on June 12, 2024, EEOC sent Mr. Spalding another letter detailing its prior efforts to reach him and requesting that he respond within ten days. It also warned him again that if he failed to do so, his charge would likely be dismissed and he would receive the right to sue notice, triggering the 90-day-period to initiate a federal lawsuit. *Id.* at 49.

That letter apparently got Mr. Spalding's attention because the next day, on June 13, 2024, a series of emails were exchanged between Mr. Spalding and EEOC officials, beginning with Mr. Spalding's 11:45 a.m. email in which he stated he was confused by the various dates set by EEOC

---

[2] The full text of that email stated:

> Mr. Spalding,
>
> I have generated a Charge with the very limited information I have, and you should have received an email saying it needs to be reviewed/signed. Really, we need to have an interview so I can obtain the details of your allegations and draft a good charge for you.
>
> If you are unable to contact me by June 17, 2024, I will have to go ahead and process your case with the available information, which would likely be a dismissal and issuance of a Notice of Rights to Sue. The reason is that there is not enough information to support your allegations, and you have not signed the formal charge. This would give you 90 days to file in federal court, otherwise the rights would be lost.
>
> I will be out of the office the week of June 17, 2024. Without contact and an interview before then, I will plan to take the action mentioned above. Thank you.

Dkt. 33-2 at 47.

for when he was supposed to contact the agency and requested the name of a person for him to talk to. *Id.* at 52. At 12:57 p.m., EEOC investigator Dayharsh replied to Mr. Spalding via email, recapping Mr. Spalding's case processing to date and instructing him to be in touch with Mr. Stalion by June 22nd. *Id.* at 51. Mr. Spalding contacted Mr. Stalion at 2:28 p.m., *id.* at 57, referencing a June 11 email he had received from Mr. Stalion and questioning the June 22 deadline. Three additional email messages were exchanged that day; the first at 2:44 p.m. (Stalion to Spalding), followed by one at 3:38 p.m. (Spalding to Stalion), one at 4:03 p.m. (Stalion to Spalding), and one at 4:39 p.m. (Dayharsh to Spalding). *Id.* at 50, 54–56. These emails expressed EEOC's continuing frustrations in coaxing Mr. Spalding to provide the required information to process his charge in response to which Mr. Spalding wrote of his confusion and dissatisfaction with his interactions with the EEOC.

Despite the lack of contact by Mr. Spalding, Mr. Stalion prepared a draft charge on his behalf laying out details of the claim he intended to bring against HMA. Mr. Stalion emphasized that the charge required Mr. Spalding's final approval and signature before they could move forward. Mr. Spalding was again contacted by Mr. Stalion on July 2 to solicit any changes/modifications to the proposed charge and set a ten-day response deadline. *Id.* at 66. Mr. Spalding did submit a few proposed changes which the EEOC adopted and incorporated in the charge. *Id.* at 67. Again, Mr. Spalding was instructed to sign the final charge by July 17 or risk its dismissal. Thus, at the very latest, by July 19, 2024, Mr. Spalding had been warned that his failure to consult with the EEOC to perfect his charge by validating and signing his claims would result in the EEOC's dismissal of his claim. On July 31st, in a lengthy letter summarizing the history of EEOC activity and Mr. Spalding's pattern of unresponsiveness to EEOC efforts to engage him in the process, he was

provided official notification of the dismissal of the administrative action and of his right to sue. *Id.* at 68–69. Notice of the dismissal of his charge was re-sent by EEOC again on August 8, 2024.

On the morning of August 26, Mr. Spalding sent an email to Mr. Stalion re: his "Closed Charge" asking if his previously dismissed case could be re-opened, to which Mr. Stalion replied as follows within a couple of hours: "Your old case was closed and you were issued a Notice of Right to Sue. You will need to open a new one. The EEOC will not pursue the same allegations . . . ." *Id.* at 73.

After the August 26 exchange of messages, the administrative record reveals no other contact(s) between Mr. Spalding and the EEOC.

We conclude, as did HMA, "The EEOC's records demonstrate that Spalding was notified that his Charge had been dismissed and (a right to sue notice) had been issued at least three times: July 31, 2024, August 8, 2024, and August 26, 2024. And Spalding's own correspondence demonstrates that he was aware the EEOC had dismissed his Charge and had issued [a right-to-sue] letter no later than August 26, 2024, more than 90 days before he filed his Complaint." Def.'s Summ. J. Br. 10, dkt. 34 (citations omitted).

**III. Mr. Spalding's Title VII & ADEA claims are time-barred**

To prosecute his claims in a judicial proceeding, Mr. Spalding was required to file his complaint within 90 days of his receipt of the notice of his right to sue from the EEOC. 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e). This time limit is similar to a statute of limitations and is not flexible such that even a slight delay can be fatal. *See Lax*, 20 F.4th at 1183 (affirming dismissal of employment discrimination lawsuit filed one day after expiration of the 90-day window).

The EEOC notice was issued to Mr. Spalding on July 31, 2024. He alleges that he received it on September 3, 2024. However, he does not provide any corroborative evidence explaining how

he knows it was that date, nor does he provide any explanation for what his receipt entailed or how it occurred. We don't know, for example, if he had been delayed in opening his mail, or where in fact his mail had been retrieved, or if he had delayed in accessing the EEOC portal through which a copy of the right to sue notice was available, as he had been instructed several times. He merely asserts that September 3 was the date on which he received the right to sue notice. We suspect that that date might have been simply assigned as such by Mr. Spalding because conveniently it would make his filing of his lawsuit on November 27, 2024, timely. September 3 was thirty-four days after the EEOC had issued its notice and eight days after he had contacted his EEOC investigator by email regarding his closed Charge on August 26, 2024.

There are several compelling reasons to question the accuracy of Mr. Spalding's barebones assertion of the September 3 date: if accurate, it would have taken the EEOC letter six weeks to reach him after it had been deposited in the mail. That is implausible, especially given that the EEOC district office from which the notice was mailed was located in Indianapolis and Mr. Spalding's home address where it was delivered was located in Jeffersonville, IN, a driving distance of slightly less than two hours (per Google maps). It is not plausible, therefore, to believe it required six weeks for this item of mail to be delivered. *See Bobbitt v. Freeman Cos.*, 268 F.3d 535, 538 (7th Cir. 2001) ("The law presumes timely delivery of a properly addressed piece of mail.")

In addition, legal presumptions have been established under Seventh Circuit precedent that allow a court to presume that a plaintiff receives an EEOC right to sue notice within five days of its mailing. *See*, *e.g.*, *Washington v. Foresman*, 148 F.R.D. 241, 244 (N.D. Ind. 1993); *Loyd v. Sullivan*, 882 F.2d 218 (7th Cir. 1989). Five days, not six weeks!

Thus, applying that presumption, Mr. Spalding would have received the right to sue letter no later than August 5, 2024, and his 90-day deadline for filing his lawsuit would have been

November 4, 2024. However, he did not file his lawsuit until November 27, 2024—114 days after the date he presumptively received the notice/letter through traditional mail service. In addition, given that Mr. Spalding had actual knowledge of the EEOC letter no later than August 26, 2024, if that date is used to calculate the 90-day period, his lawsuit filed on November 27, 2024, was two days late. His delay dooms the viability of his claims as a matter of law.

**IV. Failure to Exhaust Administrative Remedies**

The record before us clearly establishes that, despite the dogged persistence of the EEOC investigators and their commendable diligence in attempting to reach Mr. Spalding to discuss his charge and the administrative process and to enlist his cooperation in the investigative process and ultimately simply to sign the charge under oath or affirmation as drafted by the assigned EEOC employee, Mr. Spalding remained "missing in action." He did surface a time or two in response to communications from the EEOC, mostly to complain about the treatment he was receiving by the agency and to request a change in the assigned investigation because of his displeasure with the process, never to follow through on scheduling/attending the required meetings or performing the necessary tasks related to bringing a charge. It was because of his own derelictions and his own failures to cooperate that the EEOC dismissed the charge and issued the right to sue notice.

We have previously cited the controlling statutes and legal precedents requiring a plaintiff to exhaust his administrative remedies by filing a timely EEOC charge and receiving a right to sue notice prior to filing an employment discrimination complaint under Title VII or the ADEA. One requirement of this process is that the charge be made in writing and under oath. 42 U.S.C. § 2000e-5(b). These are important administrative procedures are important because they allow the employer to have notice of the specific details of the discrimination being complained of so it can

either attempt to settle the dispute and/or having been put on notice of the claim it can determine its legitimacy and seriousness and/or prepare to defend it.

Mr. Spalding's failure to respond to or cooperate in the EEOC investigation, his refusal to approve and sign his charge under oath (or affirmation), and ultimately his decision to abandon the process altogether constitute a violation of his statutory obligation to exhaust his administrative remedies prior to filing suit. HMA is entitled to summary judgment on this basis as well.

**CONCLUSION**

For the foregoing reasons, HMA's Motion for Summary Judgment is hereby **GRANTED**. Dkt. 32. Mr. Spalding's complaint shall be dismissed with prejudice. A judgment entry to that effect shall enter.

IT IS SO ORDERED.

Date: 9/30/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

THOMAS A. SPALDING
2423 Lakewood Blvd.
Jeffersonville, IN 47130

Justin A Allen
Ogletree Deakins Nash Smoak & Stewart, P.C.
justin.allen@ogletree.com

Kate Elizabeth Trinkle

Ogletree Deakins
kate.trinkle@ogletreedeakins.com